**Nelly VERREY, Plaintiff,**

v.

**Donald W. ELLSWORTH et al.,
Defendants.**

**No. 69 Civ. 604.**

United States District Court
S. D. New York.

July 30, 1969.

Cowan, Liebowitz & Latman, New York City, for plaintiff.

Debevoise, Plimpton, Lyons & Gates, New York City, J. Asa Rountree, Robert L. King, New York City, of counsel, for defendants Ellsworth, Dunn, Myrer, Hyde, Auchincloss and Axe Securities Corp.

Townley, Updike, Carter & Rodgers, New York City, Stuart Updike, Richard J. Barnes, New York City, of counsel, for defendants Lund, Powell and Steele.

## MEMORANDUM

TENNEY, District Judge.

This is a motion by defendants, pursuant to Rules 9(a), 11, 12(f) and 41(b) of the Federal Rules of Civil Procedure, for an order striking the complaint herein and dismissing the cause of action.

Plaintiff claims to be a stockholder of the Axe Science Corporation (hereinafter referred to as "Science"), an open-end investment company of the management type registered with the Securities and Exchange Commission pursuant to the Investment Company Act (hereinafter referred to as "the Act"), 15 U.S.C. § 80a–1 et seq. Science is one of four mutual funds in the Axe-Houghton family distributed by defendant Axe Securities Corporation, the other three being defendants Axe-Houghton Fund A, Inc., Axe-Houghton Fund B, Inc. and Axe-Houghton Stock Fund, Inc. (hereinafter referred to as "Fund A", "Fund B", and "Stock Fund", respectively). The remaining defendants are the investment adviser of Science, Axe Science Management Company, Inc., and the adviser of the other three Axe-Houghton Funds, E. W. Axe & Company, Inc., as well as the present and former directors of the four funds.

The gravamen of the complaint is its allegation that the defendants have, from 1963 to the present date, overvalued certain "restricted securities", i. e., securities which may not be sold to the public in the absence of registration under the Securities Act of 1933, 15 U.S.C. § 77a et seq., in computing the net asset value of each of the four funds by valuing such securities at the market price for securities of the same class issued by the same corporation. Plaintiff claims that as a result of this alleged overvaluation, the defendants have caused:

(a) the four funds to pay excessive investment advisory fees to their respective investment advisers (First Cause of Action);

(b) the four funds to pay excessive amounts upon redemption of their shares, thereby diluting the value of the remaining outstanding shares of those funds (Second Cause of Action);

(c) the purchasers of the shares of the four funds to pay excessive purchase prices for such shares and/or receive an inadequate number of shares (Third Cause of Action);

(d) the purchasers of the shares of the funds to pay excessive distribution charges to Axe Securities Corporation at time of purchase (Fourth Cause of Action);

(e) Fund B, Stock Fund and Fund A to pay excessive compensation to

Axe Securities Corporation in the form of continuing compensation paid by those three funds under their distributing agreements (Fifth Cause of Action) ; and

(f) the liquidity of the assets of the four funds to be limited, thereby restricting the redemption right of the funds' shareholders without disclosure in violation of the Investment Company Act; and the defendants, by using unsound methods in computing the asset value of the funds' shares, have caused the funds to violate duties imposed by said Act (Sixth Cause of Action).

Plaintiff instituted this action individually, derivatively and representatively on behalf of all four Axe Houghton Funds and their shareholders on two basic theories:

1. that she was a shareholder of Science; and as a result thereof,

2. she owned a "beneficial interest" in the other three Axe-Houghton Funds.

Briefly, it should be explained at this time that any stockholder of Science is entitled to take advantage of what is commonly called "the transfer privilege", which is defined in the Prospectus of Axe Science Corporation (Affid. of Alan Latman, dated June 5, 1969, Exh. 1 at 7) as follows:

"Without the payment of any additional sales charge, any stockholder of the Corporation may transfer his investment in the corporation to any other Axe-Houghton Fund distributed by Axe-Securities Corporation—each·

of which has a different investment policy, as outlined in their respective prospectuses. This privilege enables the stockholder whose investment objective changes as a result of a change in his financial circumstances or economic needs, to transfer his investment into an Axe-Houghton Fund whose investment policy is in line with his changed investment objective.

"The shares tendered for exchange are repurchased by the Corporation at the current net asset value, and the proceeds are immediately reinvested in shares of the designated Axe-Houghton Fund, also at the current net asset value. There is a nominal fee of $5 for each such exchange (in addition to any applicable transfer taxes) to help defray the expenses of the exchange. Depending upon the circumstances a capital gain or loss may be realized on any such exchange.

"*This exchange privilege may be modified or terminated at any time in the future. \* \* \*"* (Emphasis supplied.)

Inasmuch as plaintiff consents to the first branch of defendants' motion, that is, to dismiss the derivative action brought in her capacity as a stockholder of Science on the ground that plaintiff has failed to comply with the mandatory formal requirements of Rule 23.1 of the Federal Rules of Civil Procedure,[1] and has agreed to file an amended complaint in conformity therewith, this Court will address itself solely to plaintiff's contention that the "transfer priv-

1. Fed.R.Civ.P. 23.1 provides in pertinent part:

"In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by

operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. \* \* \*"

Discussing Rule 23(b), the predecessor section to Rule 23.1, the Court of Appeals for the Second Circuit agreed that compliance with the requirements of the rule was not merely technical in nature but rather was the only valid means of establishing plaintiff's capacity to sue. Abramson v. Pennwood Invest. Corp., 392 F.2d 759, 761–762 (2d Cir. 1968).

ilege" gives her that kind of "beneficial interest" in Fund A, Fund B and Stock Fund to enable her to institute derivative actions on behalf of those corporations.

It is well established that:

"Standing to assert claims under the Investment Act extends to any person holding an *ownership interest* in a company subject to the Act. E. g. Green v. Brown, 276 F.Supp. 753 (S.D.N.Y.1967); Entel v. Guilden, 223 F.Supp. 129 (S.D.N.Y.1963).[3] But where persons who are not shareholders have sought to object to a registered company's conduct, standing has been denied." General Time Corp. v. American Investors Fund, Inc., 283 F.Supp. 400, 401–402 (S.D. N.Y.), aff'd on other grounds, 403 F.2d 159 (2d Cir. 1968). (Emphasis supplied.) (Footnote omitted.)

In Entel v. Guilden, *supra*, Judge Tyler held that the warrant holders of an investment company were, in effect, holders of "distilled" shares of common stock and, therefore, possessed an "ownership interest" in the company. This decision was based on the fact that a warrant holder contributes capital to the investment company and thereby assumes a financial risk, the value of the warrants fluctuating directly with the changing value of the common stock.

In the present case, the four Axe-Houghton Funds are separate corporations, each possessing its own body of stockholders, a separate board of directors and different investment policies. If one of the funds goes out of business, the shareholders of the other funds are in no way affected thereby. Thus, it is the opinion of this Court that although Science will, as a gratuitous benefit to its stockholders, serve as a broker for the purpose of transferring its own shareholders into any of the other Axe-Houghton Funds, until such a transfer is accomplished, a shareholder of Science has no interest, beneficial or otherwise, in the other corporations. General Time Corp. v. American Investors Fund, Inc., *supra*.

Plaintiff attempts to support her position by directing this Court's attention to certain New York authorities, all of which are inapposite. Even if New York law were to apply in this instance, it is apparent that York Properties, Inc. v. Neidoff, 10 Misc.2d 439, 170 N.Y.S.2d 683 (Sup.Ct.1957) (suit by pledgee who holds stock as security for a debt), Lewin v. New York Ambassador, 61 N.Y.S.2d 492 (Sup.Ct. 1946), aff'd, 271 App.Div. 927, 67 N.Y.S.2d 492 (1st Dep't 1947) (suit by holder of voting trust certificates which have all the attributes of stock absent the voting privilege) and Braman v. Westaway, 60 N.Y.S.2d 190 (Sup.Ct. 1945) (suit by the beneficiary of a trust fund which owns the stock) are all cases in which the plaintiff has a direct financial stake in the value of the corporate shares. Although it could conceivably be argued by plaintiff that if the other funds go out of business, the "transfer provision" becomes meaningless, thereby diminishing the value of plaintiff's own shares of Science, this relationship is too remote to give plaintiff's position, in this respect, the stature of an analogy. Further, with regard to the extent that the transfer provision influences financial investment in Science, it should be noted that the Prospectus of Axe Science Corporation specifically provides that the exchange privilege may be terminated by the company at any time. (Affid. of Alan Latman, dated June 5, 1969, Exh. 1 at 7.)

Plaintiff's contention that Section 2 (a) (35) of the Act is broadly defined to include "the right to subscribe" is patently frivolous in that the term specifically refers to a stockholder's right to purchase *additional* shares issued by a corporation. Miller v. General Outdoor Advertising Co., 223 F.Supp. 790, 794 (S.D.N.Y.1963), rev'd on other grounds, 337 F.2d 944 (2d Cir. 1964).

Accordingly, after due consideration and for the above-stated reasons, plaintiff's complaint is dismissed with leave to file an amended complaint in her

capacity as a shareholder of Science in compliance with the provisions of Rule 23.1 of the Federal Rules of Civil Procedure.

So ordered.