David B. KUSNER

v.

FIRST PENNSYLVANIA CORPO-
RATION et al.

Civ. A. No. 74-1552.

United States District Court,
E. D. Pennsylvania.

April 8, 1975.

Kramer & Salus by Mitchell A. Kramer, Philadelphia, Pa., for plaintiff.

Dilworth, Paxson, Kalish, Levy & Coleman by William T. Coleman, Jr., and Edward F. Mannino, Philadelphia, Pa., for defendants First Pennsylvania Corp., The First Pennsylvania Banking & Trust Co., Associated Mortgage Companies, Inc., Associated Advisers, Inc., John R. Bunting, Philip Zinman and Ralph W. Ervin.

Duane, Morris & Heckscher by Henry T. Reath, and Jane D. Elliott, Philadelphia, Pa., for Edmund N. Bacon, Richard W. Baker, Jr., M. Todd Cooke and Kenneth S. Sweet, Jr.

Drinker, Biddle & Reath by Robert S. Ryan, Philadelphia, Pa., and Thomas V. Urmy, Jr., Boston, Mass., for First Pennsylvania Mortgage Trust.

## OPINION

HIGGINBOTHAM, District Judge.

This action is a derivative and class suit for damages and equitable relief instituted by a convertible debenture holder in The First Pennsylvania Mortgage Trust (hereinafter "Trust"). The suit was instituted against Trust, its eight trustees, and certain related corporations for alleged violations of the securities laws and the Investment Advisers Act of 1940, 15 U.S.C. § 80b–1 *et seq.* The defendants have filed, upon a number of substantive and procedural grounds, motions to dismiss the complaint which I find must be granted because plaintiff lacks standing to sue derivatively under Fed.R.Civ.P. 23.1 and because he lacks standing to sue upon the claims alleged in his own right as a security holder of Trust.

### I.

As recited in the complaint, Trust was organized under the sponsorship of defendant, First Pennsylvania Corporation (hereinafter "First Pennsylvania"), as a Massachusetts business trust [1] established to invest in a diversified portfolio of real estate mortgages and similar investments. Defendant, Associated Mortgage Companies, Inc. (hereinafter "Associated"), is a wholly owned subsidiary of First Pennsylvania and pursuant to its mortgage servicing agreement with Trust, originates, sells and services both permanent first mortgage loans and construction and development loans invested in by Trust. Defendant, Associated Advisers, Inc. (hereinafter "Advisers"), also a wholly owned subsidiary of First Pennsylvania, is under contract to Trust as an investment adviser and was organized for that specific purpose in 1970. Advisers and Associated receive fees and commissions for the services they provide Trust under their respective agreements. Defendant, The First Pennsylvania Banking and Trust Co. (hereinafter "Bank"), is also a wholly owned subsidiary of First Pennsylvania and invests in mortgage loans and construction and development loans of the type invested in by Trust. The eight individual defendants are trustees of Trust, three of whom have formal affiliations with First Pennsylvania.[2]

Against this background plaintiff claims that the defendants have defrauded and continue to defraud Trust through grossly excessive fees and commissions paid under its contracts with Associated and Advisers (Count I);

---

1. A Massachusetts business trust is an unincorporated association organized under Massachusetts law (Mass.Ann.Laws c. 182, § 1 *et seq.* (1969)) for the purpose of investing in real estate in much the same manner as a mutual fund invests in corporate securities. Historically, these trusts originated because under the mortmain statutes, corporations could not hold real estate for investment purposes. Jones v. The Equitable Life Assurance Society of The United States, CCH Fed.Sec.L.Rep. ¶ 94,986 at 97,403 (S.D.N.Y. February 14, 1975). The First Pennsylvania Mortgage Trust derives most of its income from specified real estate investments and is qualified as a real estate investment trust under Section 856 of The Internal Revenue Code, distributing as dividends at least ninety percent of its taxable income, as adjusted. 26 U.S.C. §§ 856, 857. As a qualified real estate investment trust, it avoids

federal income taxation on income realized by the Trust thus eliminating the double tax burden which its shareholders would otherwise bear if the corporate form were utilized. 34 Am.Jur. *Federal Taxation* ¶ 7860 (1975).

2. Defendant John R. Bunting has served simultaneously as a trustee of Trust and as president of First Pennsylvania Corporation and as president and chief executive officer of Bank. Defendant Philip Zinman has served simultaneously as a trustee and president of Trust, as president of Advisers, as a director of First Pennsylvania, and as chairman of the board and as chief executive officer of Associated. Defendant Ralph W. Ervin, Jr. has served simultaneously as a trustee of Trust and as executive vice president of Bank in charge of its Trust Investment Management Department.

through Trust purchases of low quality investments from Bank in August and September, 1970 (Count II); and by diverting the better investment opportunities from Trust's investment portfolio and permitting First Pennsylvania and Bank to acquire or retain those investments for their own benefit (Count III).

Plaintiff sues derivatively as to Counts I, II and III of the complaint alleging causes of action under The Investment Advisers Act of 1940 and requesting the Court to exercise its pendent jurisdiction as to state claims for breach of contract and for breach of fiduciary duty. Count IV of the complaint is a class action brought on behalf of Trust's debenture holders attacking the Prospectus of Trust under the Securities Act of 1933 and the Securities and Exchange Act of 1934, and incorporating by reference the allegations made in Counts I, II, and III. Plaintiff prays that the Court (1) enjoin Trust's performance under or renewal of its contracts with Associated and Advisers; (2) rescind both contracts and grant restitution to Trust for payments made under the contract during the pendency of this litigation; (3) award damages to Trust and to the class; and (4) award to plaintiff costs, expenses, attorneys' and accountants' fees.

## II.

*Derivative Counts.*

As to the derivative claims defendants contend that *assuming arguendo* the complaint states a claim upon which relief can be granted, plaintiff does not have standing to sue. Derivative suits may be initiated by shareholders, they argue, but not by a mere creditor, and plaintiff's interest in Trust is that of a creditor, and not a shareholder. Plaintiff counters that defendants' legal analysis ignores the multifaceted interests which he purchased in August of 1971, for he owns not merely debentures, but convertible debentures with attached warrants, the combination of which entitle him to sue as a shareholder even though he does not in fact own any Trust shares.

In *Kauffman* v. *Dreyfus Fund, Inc.*, 434 F.2d 727, 735 (3d Cir. 1970) the Court of Appeals recognized that only a proprietary interest in a business entity invests a party with the requisite legal standing to prosecute a secondary or derivative action. Judge Aldisert was emphatic in his recognition of this well established principle.

"The timber of sound reason forms the conceptual underpinning of the rule requiring stock ownership in a corporation as the prerequisite for bringing a derivative action in its behalf. Only by virtue of the shareholder's interest, which has been described as 'a proprietary interest in the corporate enterprise which is subject to injury through breaches of trust or duty on the part of the directors,' Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 321, 56 S.Ct. 466, 471, 80 L.Ed. 688 (1936), does equity permit him 'to step into the corporation shoes and seek in its right the restitution he could not demand on his own.' Standing is justified only by this proprietary interest created by the stockholder relationship and the possible indirect benefits the nominal plaintiff may acquire *qua* stockholder of the corporation which is the real party in interest. Without this relationship, there can be no standing, 'no right in himself to prosecute this suit,' Hawes v. Oakland (Hawes v. Contra Costa Water Co.), 104 U.S. 450, 462, 26 L.Ed. 827; Venner v. Great Northern Railway, 209 U.S. 24, 34, 28 S.Ct. 328, 52 L.Ed. 666 (1908)." (Footnotes omitted.)

Rule 23.1[3] of the Federal Rules of Civil Procedure also acknowledges the necessi-

---

3. Fed.R.Civ.P. 23.1 reads:
   "In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right

ty of shareholder standing in derivative actions, and expressly commands that in pleading such an action the plaintiff allege to have been a shareholder at the time of the transaction of which he complains.[4] *Entel* v. *Guilden,* 223 F. Supp. 129, 131 (S.D.N.Y.1963).

■ In contrast, the interest of a mere creditor, although it may constitute a substantial financial stake in the success of the business enterprise, is clearly non-proprietary. *Ashwander* v. *Tennessee Valley Authority,* 297 U.S. 288, 318, 56 S.Ct. 466, 470 (1936); *Brooks* v. *Weiser,* 57 F.R.D. 491, 494, 495 (S.D.N.Y.1972): *Dorfman* v. *Chemical Bank,* 56 F.R.D. 363 (S.D.N.Y. 1972). This distinction was scrupulously observed in *Brooks* v. *Weiser, supra.*

" . . . The fact that among the plethora of derivative suits brought over the generations none even discuss the issue reflects the obviousness of the proposition that the right to sue derivatively is an attribute of ownership, justified on the theory that the plaintiff in such a suit seeks to recover what belongs to the corporation, because as a co-owner, it also belongs to him. A creditor's interest, on the other hand, is limited to ensuring the corporation's continuing ability to pay him what it owes, an ability which is not in question here."

■ A debenture is a credit instrument, one which does not devolve upon its holder an equity interest in a business enterprise. But plaintiff urges the court to consider the convertibility feature of his debentures and the attached warrants to purchase shares of beneficial interest as an interest in Trust sufficiently akin[5] to shares that the law should accord him the status of a shareholder in interpreting the scope of Rule 23.1. Entertaining plaintiff's argument

---

which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs."

4. Although the debate may continue among legal scholars as to whether the standards of 23.1 extend beyond the control of mere pleading form, the principles under which it was promulgated are nonetheless consistent-ly enforced. Professor Moore takes this view of the significance of Rule 23.1 upon the prosecution of a derivative suit:

" . . . Certainly the requirement is not merely a matter of pleading. If the provision is effective it means that plaintiff must both plead and, if controverted, prove stock ownership of the time of the transactions complained of (unless the stock thereafter devolved on him by operation of law), and that on failure of such proof there can be no recovery, or recovery only for those transactions, if extending over a period of time, which occurred after plaintiff became a shareholder. Obviously, there is no such anomaly in modern procedural law as would require plaintiff to plead, as a mere matter of procedure, an allegation of this character without the necessity of proving it when controverted."

3B J. Moore, Moore's Federal Practice, ¶ 23.1.15[2] at 23.1–63 (2d ed. 1948).

5. In describing his warrants, plaintiff lifts the term "distilled share" from dictum in *Entel* v. *Guilden, supra,* wherein Judge Tyler expounds the fiscal significance of using *perpetual* warrants in raising corporate equity capital. The full phrase was " . . . 'distilled' share . . .—the sweet liquor of speculation concentrated with some of the dregs of investment 'responsibility' left behind." 223 F.Supp. at 130. I do not find the *Entel* case persuasive for the reasons set forth at pages 283–284 *infra.*

requires that I look beyond his complete lack of share ownership and engage in a comparative analysis of his present interest and the interest which he would hold were he the legal or beneficial owner of Trust shares. This analytical approach was used in *Ashwander* v. *Tennessee Valley Authority, supra,* when the Court was confronted with the argument that ownership of a certain class of stock did not carry with it the privileges of a proprietary interest. However, despite the appropriateness of this method of legal analysis when rights accompanying the ownership of different classes of stock are at issue, the concept of proprietary interest is distorted beyond analytical usefulness when the holder of a mere option to purchase shares who has not yet exercised his option or legally committed himself to the exercise of his option is held a shareholder under Rule 23.1 by virtue of the dollar amount of his financial investment in business enterprise on behalf of which he seeks to bring suit.[6] In this instance plaintiff does not hold Trust shares and the interest which he does hold is nonproprietary.

■ The plaintiff's interest in Trust does not afford him rights or privileges traditionally associated with an ownership interest. He presently owns eighteen $1000 six and three-quarter percent convertible subordinated debentures due September 1, 1991, with attached series B warrants issued by Trust in August 1, 1971. These securities do not entitle plaintiff to vote, he is not entitled to participate in Trust profits or distributions,[7] nor is he subject to Trust losses.[8] Plaintiff holds a debt obligation of the Trust upon which he is entitled to

receive interest at a rate of six and three-quarter percent per year. These obligations mature September 1, 1991, at their face value but are callable at the option of Trust at an earlier date at a premium price designated by the Trust indenture. The principal amount of the indebtedness is secured by a sinking fund.

The contractual options which he holds in the form of warrants and the convertibility term in his debentures do not alter plaintiff's status. Despite his ownership of the warrants and the convertible debentures his right to participate as a proprietor of Trust is not changed and he does not assume the additional financial risks of a shareholder. The difference between the risk which plaintiff presently assumes as a debenture holder of Trust and the risks which he would assume if he were to exercise his conversion privileges are quite dramatic. If plaintiff were to convert his debentures into shares of beneficial interests, he would lose the security of Trust's contractual obligation to pay interest at designated intervals upon the amount of converted debenture in exchange for the risk of gain or loss realized by Trust's investment portfolio. As a debenture holder, the principal amount of his debt is payable at a time certain, but as a shareholder the value of his shares is completely at the mercy of the market unless, of course, the Trust is liquidated in which case he may or may not realize a full return of his initial investment.

The warrants guarantee the opportunity to purchase shares during the period before their expiration at a fixed price but plaintiff is not a subscriber of

---

6. I decline to adopt the rationale of *Hoff* v. *Sprayregan,* 52 F.R.D. 243 (S.D.N.Y.1971). However, it is significant in that case that the warrant holder had exercised his warrants as of the date upon which the complaint was filed.

7. The face of plaintiff's warrants read, in part:
   "Prior to the exercise of any Series B. warrant represented hereby, the holder

hereof shall not be entitled to any rights of a Shareholder of the Trust, including without limitation the right to vote or the right to receive distributions. . . . "

8. Plaintiff does not allege that Trust is in default upon its obligations or that it is at this time in any imminent danger of insolvency.

the shares and until he exercises the warrants, they do not represent the financial commitment of a Trust shareholder. Plaintiff is not legally obligated to exercise his warrants or to convert his debentures, but if he chooses to exercise either option, he must then pay the designated purchase price.[9] The principal amount of his debentures must be assigned to the share price of conversion in exercising the debenture conversion privilege. In exercising his warrants, however, plaintiff would not be converting a financial investment he had previously made into shares of beneficial interest, he would merely be exercising an option to purchase, and in making his election he would be required to invest additional money in payment for the shares.

Plaintiff is a creditor, not a shareholder. He receives interest, not dividends. He holds a legally enforceable promise of Trust, not a share in its earnings and losses. Plaintiff has made a loan and he limits his financial risks to a lender's risk, his responsibilities to a lender's responsibility, and justly, his standing to a lender's standing. Despite plaintiff's contention, he remains a creditor until he either converts his debentures or exercises his warrants. *Cf. Parkinson* v. *West End Street Railway Co.,* 173 Mass. 446, 53 N.E. 891, (1899) (Holmes, J.); *Pratt* v. *American Bell,* 141 Mass. 225, 5 N.E. 307 (1886); *Verrey* v. *Ellsworth,* 303 F.Supp. 497 (S.D. N.Y.1969).[10]

Plaintiff places considerable reliance upon the case of *Entel* v. *Guilden, supra,* but I do not find that case persuasive authority here. Although in the *Entel* case Judge Tyler discusses at length the use of perpetual warrants[11] as a separate form of corporate equity, he holds that the Investment Company Act of 1940 invests all security holders, whether they hold an equity interest or a creditor's interest, with standing to bring an action for the benefit of an investment company in which they hold an interest for actionable conduct expressly prescribed by that act. As stated by Judge Tyler:

> "From the face of the Act itself, as quoted above, the purpose in making certain actions, including those in Section 17, 'unlawful' was to protect the interests of those risking their capital in investment companies who would be hurt by the overreaching of insiders.

. . .

> \*    \*    \*    \*    \*    \*

> "Particularly in view of the strongly expressed intent of the Investment Company Act to benefit 'investors' and 'all classes of security holders', the balance of economic policy lies with permitting this claim to be heard. I hold, then, that Section 17(e) creates a private right of action for the benefit of an investment company which may be exercised secondarily by plaintiffs as the holders of the warrants in question." 223 F. Supp. at 133.

The plaintiff here brings suit under the Investment Advisers Act of 1940. I do not find the Investment Advisers Act (hereinafter "Act") is parallel to the Investment Company Act as they relate to the rights of non-proprietary security holders to bring suits for the benefit of the business enterprise in which they hold an interest when violations of the Act are alleged.

The Act does not express an intent to benefit all classes of security holders

---

9. The debenture conversion price is $26.00 per share, and plaintiff may exercise his warrants at a price of $28.50 per share. These prices are subject to adjustments as specified in the Trust indenture and the Warrant agreement.

10. If plaintiff now choses to exercise his option to purchase shares of beneficial interest, he must then meet the contemporary ownership rule. This rule requires that plaintiff be a shareholder at the time of the transaction of which he complains. Fed.R. Civ.P. 23.1. See, 3B J. Moore, Moore's Federal Practice ¶ 23.1.18 (2d ed. 1948).

11. Plaintiff's warrants expire September 1, 1975.

of the business enterprise adversely affected by its violation but to the contrary the direct and immediate beneficiaries of the Act are the clients which the investment advisers serve. This is clear from a cursory reading of sections under which plaintiff brings suit.[12] These sections expressly refer to protecting the client of the investment adviser and not all security holders of an investment adviser's client.[13] Of course security holders indirectly benefit from statutory protections which the Act affords, but this indirect protection is clearly not a basis for imputing to the Investment Advisers Act the purpose or intent to abridge the requirement of the shareholders standing in derivative actions. *Vanderboor* v. *Sexton*, 460 F.2d 362 (8th Cir. 1972). The Investment Company Act uniquely confronts the traditional abuses by management and insiders against minority shareholders and other security holders, the same salutory purpose served by derivative suits generally. However, the Investment Company Act expressly extends its protective umbrella to all security holders, both creditors and proprietors, creating a right of action beyond the traditional limits of secondary actions. Levitt v. Johnson, 334 F.2d 815 (1st Cir. 1964). This is not true of the Investment Advisers Act for upon analysis this Act does not afford plaintiff as a creditor standing to prosecute his claims derivatively for the benefit of Trust.

I therefore conclude that plaintiff is not a shareholder in that he does not hold a proprietary interest in Trust. I also conclude that the Investment Advisers Act of 1940 does not provide plaintiff a statutory basis to prosecute a derivative claim in the absence of a proprietary interest and therefore he lacks standing to sue derivatively under Counts I, II, and III of the complaint.

■ Even if plaintiff were found to be a shareholder of Trust within the meaning of Rule 23.1, plaintiff has not complied with the other requirements of this rule because he has not alleged ". . . with particularity the efforts . . . made . . . to obtain the action he desires from the directors or comparable authority . . . ." Plaintiff recites at paragraph 30 of his complaint:

> "Plaintiff has made no demand upon the board of trustees of Trust to bring and prosecute this action. Such a demand would have been futile because the board of trustees are dominated and controlled by the defendants First Pennsylvania and its subsidiaries and they would not diligently prosecute an action against said defendants. Furthermore, the trustees are themselves defendants in this action. Any demand upon the trustees to redress the wrongs herein complained of would, in effect, constitute a demand that they bring action against themselves and would have been futile.".

Under the circumstances alleged here where five of the eight trustees are not formally affiliated with the other defendants and plaintiff has not pled with particularity that these trustees, who constitute a majority of the managing body of the business enterprise, were active participants in the fraudulent or illegal conduct, there is no legal basis for excusing the demand requirement of Rule 23.1. *In re Kauffman Mutual Fund Actions*, 479 F.2d 257 (1st Cir. 1973); *Jones* v. *Equitable Life Assurance Society of the United States*, CCH Fed.Sec.L.Rep. ¶ 94,986 (S.D.N.Y. February 14, 1975). As Judge Aldrich stated so clearly in *In re Kauffman Mutual Fund Actions, supra,* the plaintiff must plead with particularity for

---

12. 15 U.S.C. §§ 80b–3, 80b–5, 80b–6, 80b–15. I do not here decide whether a private right of action was created under the Investment Adviser's Act.

13. Advisers, Associated, and First Pennsylvania deny that they are investment advisers under the Investment Advisers Act of 1940.

"the stockholder may not plead in general terms, hoping that, by discovery or otherwise, he can later establish a case. Indeed, if the requirement could be met otherwise, it would be meaningless." Judge Aldrich then went on to hold that an allegation of domination and control unsupported by underlying facts does not satisfy the requirement of particularity for such conclusory allegations are not a *per se* link between the unaffiliated majority and the affiliated and allegedly wrongdoing minority. Also, Judge Aldrich held that the mere approval by the directors of action alleged to be injurious to the corporation is not sufficient to excuse the demand unless it is completely undirected to a corporate purpose; this is not the allegation of the complaint presently at issue.

The case of *Jones* v. *Equitable Life Assurance Society of the United States, supra,* is squarely on point. There, a shareholder of a Massachusetts business trust brought an action under the Investment Advisers Act against the trust, the investment adviser of the trust and the trust trustees. The claims made by plaintiff under the Investment Advisers Act were identical to those made in this case. Plaintiff alleged that the investment adviser was not registered under the Act; that the advising contract was unfair and provided for excessive compensation; that the Trust bought its initial portfolio from the investment adviser at a price that was unfair; and that the investment adviser did not give the best advice to the Trust, and that it kept the best investments for itself, thus violating its contract. Three of these trustees were alleged to have been affiliated and under the control of the Investment Adviser. As to the other six trustees, there was no allegation of affiliation and there were no facts alleged in the complaint to show that the six trustees were under the control of the Investment Adviser. Plaintiff alleged in his complaint that he had made no demand upon the trustees because they were dominated and controlled by the investment advisers and because they were themselves defendants in that action. Judge Wyatt completely rejected plaintiff's arguments and dismissed the complaint stating:

"It is true that all but one of the independent trustees are themselves named as defendants in the action, but surely the strong policy of Rule 23.1 cannot be satisfied by simply adding the trustees as defendants. . . . The addition of the trustees, certainly the unaffiliated trustees, must have been with the hope that thereby Rule 23.1 could be satisfied." CCH Fed. Sec.L.Rep. at ¶ 94,986; p. 97,404.

Here, as in *In re Kauffman Mutual Fund Action* and *Jones,* the plaintiff has not pleaded with particularity the reason for not making his demand upon the Trust trustees and therefore dismissal of his complaint is appropriate. *Cf. Landy* v. *Federal Deposit Insurance Corp.,* 486 F.2d 139, 148 (3d Cir. 1973).

*Class Action Count.*

In Count IV of his complaint, plaintiff has attempted to avoid the many obstacles which confront him on his derivative counts by couching the identical legal claims in the language of a securities fraud class action claim. Although plaintiff has been verbally deft in casting this final count of his complaint, he has been unsuccessful in transforming alleged wrongs against Trust into claims which are personal to him and the individual members of the class who he purports to represent.

█ The principle is well established, requiring no extended discussion, that a legal wrong to a corporation or business trust does not give rise to an individual or primary right of action for a security holder of the business enterprise, even though his financial interests may be adversely affected. For example, a corporate shareholder does not have a personal right to sue upon a contract when his corporation and not he is the contracting party. *Fleischer* v. *Par-*

*amount Pictures Corp.*, 329 F.2d 424 (2d Cir. 1964), *cert. denied*, 379 U.S. 835, 85 S.Ct. 68, 13 L.Ed.2d 43 (1968). This legal principle controls even though the shareholder is one hundred percent owner of the corporation. See *Erlich* v. *Glasner*, 418 F.2d 226 (9th Cir. 1969).

Claims instituted under the federal securities laws are not exempt from this principle. In *Kauffman* v. *Dreyfus Fund, Inc.*, 434 F.2d 727 (3d Cir. 1970), the plaintiff shareholder brought suit both derivatively and as a class action for alleged violations of the Sherman Act, the Clayton Act, the Investment Company Act, and the Investment Advisers Act, and the Securities and Exchange Act of 1934. The Court held as to the class action that a shareholder does not have a primary or personal cause of action to recover damages allegedly sustained by his corporation by reason of violations of the antitrust and securities laws. Judge Aldisert, writing for the panel, concluded:

"A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists of the diminution in value of his corporate shares resulting from the impairment of corporate assets. In this situation, it has been consistently held that the primary wrong is to the corporate body and, accordingly, that the shareholder, experiencing no direct harm, possesses no primary right to sue. Ash v. International Business Machines, 353 F.2d 491 (3 Cir. 1965), cert. denied, 384 U.S. 927, 86 S.Ct. 1446, 16 L. Ed.2d 531 (1966); Loeb v. Eastman Kodak Co., 183 F. 704 (3 Cir. 1910).

He went on to state:

"Because appellee, as a shareholder of the four funds, does not have standing to assert a personal action, it is evident that he may not serve as a class representative under Rule 23 on behalf of all similarly situated shareholders of the 65 funds. Before one may successfully institute a class action '[i]t is of course necessary generally that [he] be able to show injury to himself in order to entitle him to seek judicial relief.' Kansas City, Mo. v. Williams, 205 F.2d 47, 51 (8 Cir.) cert. denied, 346 U.S. 826, 74 S.Ct. 45, 98 L.Ed. 351 (1953). A plaintiff who is unable to secure standing for himself is certainly not in a position to 'fairly insure the adequate representation' of those alleged to be similarly situated. *See* Wright, Law of Federal Courts 307–08. In short, a predicate to appellee's right to represent a class is his eligibility to sue in his own right. What he may not achieve himself, he may not accomplish as a representative of a class."

*Accord, Ash* v. *I. B. M.*, 353 F.2d 491, (3d Cir. 1965) (Hastie, J.)

■ Similarly, a shareholder does not state a primary and personal cause of action by alleging that the wrongful acts against the corporation or business trust were not disclosed to him. Such claims, though phrased in language which tracks the provisions of the securities laws commanding full disclosure in connection with the purchase and sale of securities, cannot stand where it is evident from the pleadings that the substance of the claim is secondary in nature and in vindication of corporate wrongs which adversely affect the security holder indirectly through his interest in the corporation. *Cf. Kauffman* v. *Dreyfus Fund, Inc., supra; Gordon* v. *Fundamental Investors, Inc.*, 362 F. Supp. 41 (S.D.N.Y.1973). In *Gordon* a shareholder brought suit under the Investment Company Act of 1940 and the proxy rules of the Security Exchange Commission against his mutual fund, its directors, its Investment Adviser, the directors of the Investment Adviser and certain other defendants. The plaintiff sued derivatively and brought a class action. The Court held that plaintiff's claim of non-disclosure in a proxy solicitation could not be brought as a class ac-

tion but only as a derivative suit. Judge Gurfein stated:

"It seems clear under the doctrine of [Case v.] *Borak* [377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423] and *Mills* [v. Electric Auto Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593] *supra*, Note 2, that the proxy violation can give rise to an independent claim for money damages. But such a claim must be posited on actual damage or at least on an independent right of recovery to the shareholder. If no right of recovery resulted from the wrongful act itself, the failure to *disclose* that it had occurred will not, *ipso facto*, create a right of recovery in the shareholder. The sustaining of that portion of the complaint charging proxy violations in Rosenfeld v. Black, *supra* [2nd Cir.] 445 F.2d [1337,] at 1349–1350, must be read in the light of the circumstance that the sole claim for relief there was derivative in nature."

 Plaintiff's securities act class action claims clearly flow from the wrongs which he alleges the Trust has suffered at the hands of the defendants. Plaintiff is not a party to Trust's contract with Advisers nor is he a party to the mortgage servicing agreement with Associated. Plaintiff was not even a security holder of Trust during the August and September transactions of 1970. These claims made in Counts I, II, and III and realleged by reference in Count IV of the complaint as violations of the securities laws are derivative in nature. They are legal wrongs to the Trust and not legal wrongs to plaintiff personally but merely adversely effect his financial interests in Trust. I therefore hold that upon principles espoused *in Kauffman* v. *Dreyfus Fund, Inc.*, the plaintiff does not have standing to sue

primarily upon the claims alleged and therefore Count IV of the complaint must be dismissed.

### III.

### CONCLUSION

I conclude that plaintiff does not have standing to prosecute a derivative suit under Fed.R.Civ.P. 23.1 because he is not a shareholder of Trust and because he has not made a demand upon the trustees. Also, he may not pursue his case as a class action because, in contrast to proceeding on behalf of Trust, his complaint does not set forth a claim under which plaintiff is entitled to proceed in his own right.

This opinion constitutes my findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a). An appropriate order will be entered.[14]

---

14. Plaintiff has pursued this suit with a broad scattering of allegations seeking to find some foundation of federal jurisdiction which arguably would support his claim. Such a scattergun assault is difficult to analyze and to ferret out therefrom the jurisdictional prerequisites. Thus, in this opinion I have basically confined my analysis to those authorities cited in the briefs of the parties, and this dismissal is consistent with the authorities called to my attention.