Louise SIMONS, Plaintiff
Below, Appellant,

v.

Marshall S. COGAN, Stephen D. Wein-
roth, Hansac, Inc., General Felt Indus-
tries, Inc. and Knoll International
Holding, Inc., formerly known as
GFI/Knoll International Holding Com-
pany, Knoll International, Inc., Defend-
ants Below, Appellees.

Supreme Court of Delaware.

Submitted: May 17, 1988.
Decided: Oct. 19, 1988.

Robert Goldberg, of Biggs & Battaglia,
Wilmington, Mitchell A. Kramer, Steven M.
Steingard (argued) and Larry M. Keller,
Esquire of Mitchell A. Kramer & Associ-
ates, Philadelphia, for appellant.

Allen M. Terrell, Jr. (argued) and Michael J. Feinstein, of Richards, Layton & Finger, Wilmington, and Phillip Smith, of Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., for appellees.

Before HORSEY, WALSH and HOLLAND, JJ.

WALSH, Justice:

This is an appeal from a decision of the Court of Chancery, 542 A.2d 785, granting a motion to dismiss a class action brought by Louise Simons ("Simons"), a holder of convertible subordinated debentures, against the issuing corporation, Knoll International, Inc. ("Knoll"), its controlling shareholder, Marshall S. Cogan ("Cogan"), and other related corporate constituents. Simons' complaint asserted claims based on violations of fiduciary duty, breach of indenture and common law fraud. In granting the motion to dismiss, the Court of Chancery determined that the issuing corporation and its directors do not owe a fiduciary duty to the debenture holders. In addition, the court ruled that the restrictive provisions of the indenture agreement precluded a claim for breach of indenture. Finally, the court dismissed the fraud claim holding that Simons' complaint failed to plead facts constituting actionable fraud. We agree with the reasoning and holding of the Court of Chancery and accordingly affirm the judgment in all respects.

## I

A brief recitation of the facts, consistent with the procedural setting of this appeal and based essentially on the allegations of the complaint, will suffice.

The transaction challenged in this case involves the merger of two related corporations, Hansac, Inc. ("Hansac") and Knoll.[1] The merger which was completed on January 22, 1987, left Knoll, the surviving corporation, as the wholly owned subsidiary of Knoll Holdings. The merger caused the minority shareholders of Knoll to be eliminated through a $12 cash tender offer.

Significantly, the merger also resulted in the execution of a supplemental indenture which eliminated the right of Knoll's convertible debenture holders to convert their debentures into shares of its common stock. The supplemental indenture, which was executed by Knoll and the indenture trustee, provided that in lieu of the right to convert into the common stock of Knoll, the debentures would be convertible into $12.00 cash for each $19.20 principal amount of debenture. An additional supplemental indenture was also executed increasing the interest rate on the debentures from 8½ percent to 9⅞ percent per annum.

Simons filed a class action on behalf of the holders of Knoll's convertible debentures asserting as a primary cause of action that the defendants, in terminating the right to convert the debentures into the common stock of Knoll, breached a fiduciary duty to the debenture holders. In support of this claim the complaint essentially alleges: (1) Cogan, as the controlling shareholder of both Knoll and Hansac, unilaterally set the $12 conversion price without negotiating with a representative of the debenture holders; (2) there were conflicts of interest among Knoll's directors and no special committee of independent directors was formed to evaluate the transaction; (3) Knoll's directors did not seek other offers to acquire Knoll; and (4) the transaction was timed to take advantage of the 1986 low point in the trading price of Knoll's shares and debentures. Moreover, it is claimed that the $12 conversion price was unfair and inadequate.

The complaint also contains claims sounding in breach of contract. It is alleged that Knoll breached the terms of the indenture by changing the conversion fea-

---

1. Hansac is a wholly owned subsidiary of GFI Nevada, Inc. ("GFI Nevada"). GFI Nevada is wholly owned by General Felt Industries, Inc. which is in turn wholly owned by Knoll International Holding, Inc. ("Knoll Holding"). Knoll Holding through its subsidiary GFI Nevada con- trols approximately 90.5 percent of the voting stock of Knoll. Marshall S. Cogan, an individual defendant, controls 51.5 percent of the voting interests of Knoll Holding giving him effective control of both Hansac and Knoll.

ture without the approval of all debenture holders as required by section 15.02 of the indenture. Further, the complaint premises a breach of contract claim on the allegation that Knoll also violated section 15.02 by entering into a supplemental indenture without obtaining the required consent of the holders of not less than a majority of the aggregate principal amount of debentures outstanding.

In what Simons characterizes as a fraud claim, the complaint alleges that materially false and misleading statements or omissions of material information were made in a 1983 prospectus published in connection with the original distribution of debentures and in the 1986 offering circular issued pursuant to the tender offer portion of the merger. In support of this claim the complaint asserts that: (1) the offering circular fails to state how the $12 per share price and merger consideration was determined; (2) the offering circular used an incorrect effective tax rate in projecting Knoll's 1987 operating income; (3) the offering circular failed to disclose that the investment banker who rendered a fairness opinion on the $12 tender offer had previously recommended $16 per share as an excellent value; and (4) the 1983 prospectus issued pursuant to the sale of the debentures did not state that Knoll would not seek the consent of the debenture holders as required by the indenture, before supplementing the indenture.

Defendants filed a motion to dismiss the complaint on the grounds that it failed to state a valid cause of action. In granting the motion the Chancellor ruled that Simons, as a debenture holder, did not share in a fiduciary relationship with the issuing corporation or its directors and the complaint failed to plead facts necessary to maintain an action for fraud. He also held that the "no recourse" provision of the indenture barred an action based on breach of indenture against all defendants except the issuing corporation and the terms of the indenture barred Simons from bringing suit on the indenture without initially making a demand on the indenture trustee on behalf of 35 percent of the outstanding debentures.

## II

The first issue presented in this appeal, whether the directors of the issuing corporation owe a fiduciary duty to the holders of convertible debentures, requires that we revisit a question addressed indirectly in an earlier opinion of this Court, *Harff v. Kerkorian*, Del.Supr., 347 A.2d 133 (1975).

This Court's holding in *Harff* is best understood in the context of the Court of Chancery decision which it reviewed. In *Harff*, the plaintiffs had sought relief in the Court of Chancery, both derivatively and on behalf of a class. *Harff v. Kerkorian*, Del.Ch., 324 A.2d 215 (1974). Regarding plaintiff's first claim, the Chancellor held that convertible debenture holders did not have standing as "stockholders" for purposes of maintaining a derivative action. *Id.* at 219. The court reasoned that, until the conversion feature is exercised, the debenture holders stand as creditors of the corporation with their rights determined by the indenture contract. The plaintiff in *Harff* also sought to assert class action rights, independent of the indenture, based on an alleged fiduciary duty owed by the director defendants to the debenture holders. In rejecting that assertion, the Chancellor concluded that such independent claims must be based on "special circumstances":

> It is apparent that unless there are special circumstances which affect the rights of the debenture holders as creditors of the corporation, e.g., fraud, insolvency, or a violation of a statute, the rights of the debenture holders are confined to the terms of the Indenture Agreement pursuant to which the debentures were issued.

324 A.2d at 222 (citations omitted).

On appeal, this Court, in a *per curiam* opinion, did not directly consider the broad question of whether a fiduciary obligation extends to debenture holders. Instead this Court reversed on the narrow ground that the Court of Chancery improperly granted summary judgment against the plaintiffs on their fraud claim. This Court's failure

to expressly endorse the fiduciary analysis of the Court of Chancery has led to speculation as to whether a residual fiduciary obligation is owed to debenture holders. *See e.g., Continental Illinois Nat'l Bank and Trust Co. of Chicago v. Hunt Int'l Resources Corp.,* Del.Ch., No. 7888, 7844, Jacobs, V.C. (Feb. 27, 1987) (holding that a debenture holder has no independent right to maintain a claim for breach of fiduciary duty); *Norte & Co. v. Manor Health Corp.,* Del.Ch., No. 6827, 6831, Berger, V.C. (Nov. 21, 1985) (same). *But see Green v. Hamilton Int'l Corp.,* S.D.N.Y., 76 Civ. 5433 (July 13, 1981) (holding that a cause of action for breach of fiduciary duty may lie under Delaware law apart from the express terms of the indenture agreement).

Our decision in *Harff,* if read against the enlarged holding of the Court of Chancery, does not support the inference that, under Delaware law, a fiduciary duty is owed to debenture holders. In dismissing the class claim, the Chancellor found no fiduciary relationships but noted that the class, as creditors of the corporation and apart from the debenture provisions, could seek recovery for "fraud, insolvency or a violation of a statute." Since the plaintiffs in *Harff* conceded the absence of insolvency or statutory violation, the sole focus of the Chancellor was upon the claim of fraud. He concluded that fraud was not alleged in the complaint. On appeal, this Court reached a contrary conclusion as to the fraud allegation and remanded for a factual determination. We did not differ, however, with the Chancellor's substantive analysis. In effect, this Court permitted the class action in *Harff* to proceed because plaintiffs had brought themselves within the fraud exception, not because the complaint stated a cause of action for breach of fiduciary duty.

■ Notwithstanding the clear inference of our holding in *Harff,* we deem it advisable to address directly the fiduciary claim asserted by Simons here and in the Court of Chancery. In order to determine whether a holder of a convertible debenture is owed a fiduciary duty by the issuing corporation and its directors we must begin our analysis with an examination of the nature of the interest or entitlement underlying a convertible debenture. A debenture represents a long term unsecured debt of the issuing corporation convertible into stock under certain specified conditions. *Cf.* 6A H. Schlagman, *Fletcher Cyclopedia of the Law of Private Corporations* § 2640.1 (perm. ed. 1981) (discussing convertible bonds). A debenture is a credit instrument which does not devolve upon its holder an equity interest in the issuing corporation. *See Kusner v. First Pennsylvania Corp.,* E.D.Pa., 395 F.Supp. 276, 281 (1975), *rev'd on other grounds,* 3d Cir., 531 F.2d 1234 (1976). Similarly, the convertibility feature of the debenture does not impart an equity element until conversion occurs. This distinction was noted by the Chancellor in *Harff:*

> "That a bond is convertible at the sole option of its holder into stock should no more affect its essential quality of being a bond than should the fact that cash is convertible into stock affect the nature of cash. Any bond, or any property, for that matter, is convertible into stock through the intermediate step of converting it to cash. ... [C]ase law indicates that a convertible debenture is a bond and not an equity security until conversion occurs."

*Harff v. Kerkorian,* 324 A.2d at 220 (quoting *In re Will of Migel,* Sup.Ct., 71 Misc.2d 640, 336 N.Y.S.2d 376, 379 (1972)) (citations omitted). In sum, a convertible debenture represents a contractual entitlement to the repayment of a debt and does not represent an equitable interest in the issuing corporation necessary for the imposition of a trust relationship with concomitant fiduciary duties. *Cf. Briggs v. Spaulding,* 141 U.S. 132, 147, 11 S.Ct. 924, 929, 35 L.Ed. 662 (1891) (discussing relationship between duty and nature of undertaking).

Simons argues that this traditional analysis has been softened by cases which have held that convertible debenture holders possess an interest in the underlying corporation sufficient to warrant the imposition of fiduciary duties. Typical of this expansive theory is *Green v. Hamilton Int'l Corp.,* S.D.N.Y., 76 Civ. 5433 (July 13, 1981).

Interpreting the significance of the opinion in *Harff*, the court in *Green* reasoned:

> *[Harff]* supports two propositions relevant to the matter before this Court. First, under Delaware law, convertible debenture holders do not possess all the rights of shareholders with respect to actions taken by corporate directors or majority shareholders. Second, in certain circumstances, a holder of a convertible debenture is entitled to different treatment from a mere creditor of a corporation, and a cause of action for breach of fiduciary duty may lie under Delaware law apart from the express terms of an Indenture Agreement.
>
> . . . .
>
> As holders of convertible debentures, plaintiffs were part of the entire community of interests in the corporation—creditors as well as stockholders to whom the fiduciary duties of directors and controlling shareholders run.

*Id.* (citations omitted).

■ As previously indicated, we do not believe that our holding in *Harff* supports an inference that a fiduciary duty is owed to holders of convertible debentures. Nor are we persuaded by the reasoning in *Green*. In relying on an expectancy interest created by the conversion feature of the debenture, the *Green* court misperceives the type of interest required for the imposition of fiduciary duties under Delaware law. As this Court recently noted in *Anadarko Petroleum Corp. v. Panhandle Eastern Corp.*, Del.Supr., 545 A.2d 1171 (1988) a mere expectancy interest does not create a fiduciary relationship. Before a fiduciary duty arises, an existing property right or equitable interest supporting such a duty must exist. The obvious example is stock ownership. Until the debenture is converted into stock the convertible debenture holder acquires no equitable interest, and remains a creditor of the corporation whose interests are protected by the contractual terms of the indenture.

## II

Having determined that a convertible debenture holder does not have standing to bring a claim based on a breach of fiduciary duty, we next consider whether the Court of Chancery properly concluded that Simons failed to plead facts in her complaint sufficient to constitute the tort of fraud. In order to maintain a claim for fraud the plaintiff must allege that the defendant, with intent to deceive, misrepresented a known fact upon which the plaintiff reasonably relied to her detriment. *See Harman v. Masoneilan Int'l, Inc.*, Del.Supr., 442 A.2d 487 (1982). *See also Prosser and Keeton on Torts* § 105, at 728 (Keeton 5th ed. 1984).

■ Although the word "fraud" does not appear in her complaint, Simons argues that a claim of fraud is supported by the complaint's reference to misstatements or omissions made in the 1983 prospectus relating to the sale of the debentures, and in the 1986 offering circular issued pursuant to the tender offer for Knoll's minority shares. These allegations, however, even if taken as true, fail to establish the necessary element of *scienter*, i.e., that Knoll made the statements with intent to deceive the debenture holders. These allegations also fail to establish that the debenture holders relied on these alleged misstatements to their detriment. The absence of these essential factual allegations is fatal to a fraud action. Accordingly, we hold that the Court of Chancery properly dismissed Simons' fraud claim.

## III

■ We next consider whether the "no recourse" provision of the indenture operates to insulate all defendants except the issuing corporation from liability for breach of the indenture.[2] As the Chancel-

---

**2.** The "no recourse" provision, found in article 13 of the indenture, provides in part:

> No recourse shall be had for the payment of the principal of, premium, if any, or the interest on any Debentures, or any part thereof, or for any claim based thereon or otherwise in respect thereof, or of the indebtedness represented thereby, or upon any obligation, covenant or agreement of this Indenture, against any incorporator, or against any stockholder, officer or director, as such, past, present or future, of the Company, or of any predecessor

lor correctly noted, the "no recourse" provision found in Article 13 of the indenture is a standard provision that enjoys general acceptance. *See Continential Illinois National Bank,* slip op. at 13–14 (discussing the recognition and parameters of a "no recourse" provision). *Cf. Harff v. Kerkorian,* Del.Ch., 324 A.2d at 217 ("no recourse" provision as an absolute defense to actions by debenture holders against directors). *See also* 3A H. Schlagman, *Fletcher Cyclopedia of the Law of Private Corporations* § 1241.1 (perm. ed. 1986). The meaning of the "no recourse" provision is clear —it extends broad immunity to stockholders, directors and officers of the issuing corporation. Accordingly, we agree with the Court of Chancery that since the "no recourse" provision of the indenture limits liability for breach of contract to Knoll, the issuing corporation, the motion to dismiss the contractual claim against the individual defendants must be granted.

IV

Finally we consider the Court of Chancery's holding that Simon is precluded by section 8.08 of the indenture from bringing a claim for breach of indenture against the issuing corporation. Section 8.08 of the indenture provides in part:

> No holder of any Debenture shall have any right to institute any action, suit or proceeding at law or in equity for the execution of any trust hereunder or for the appointment of a receiver or for any other remedy hereunder, unless (i) such holder previously shall have given to the Trustee written notice of the happening and continuing of one or more of the Events of Default herein specified, (ii) the holders of 35 percent in principal amount of the Debentures then outstanding shall have requested the Trustee in writing to take action in respect of the matter complained of, and shall have af-

forded to it a reasonable opportunity either to proceed to exercise the powers herein granted or to institute such action, suit or proceeding in its own name....

The purpose of section 8.08 "is to deter individual debenture-holders from bringing independent law suits for unworthy or unjustifiable reasons, causing expense to the Company and diminishing its assets." American Bar Foundation, *Commentaries on Model Debenture Indenture Provisions* § 5–7, at 232 (1971). Such limitations on the bringing of a suit are standard in indenture agreements and have been generally upheld by the courts. *Id.* at 233.

■ Thus, under the terms of the indenture the holders of 35 percent in principal amount of debenture must make a written request to the trustee to institute suit before any one of them can bring a claim based on an alleged violation of the indenture. Simons' complaint does not assert that the 35 percent threshold of section 8.08 has been satisfied and Simons tacitly concedes that it has not. Such a concession appears fatal to Simons' claims for breach of indenture.

■ Simons counters, however, that the Chancellor, in concluding that section 8.08 was controlling, failed to consider the effect of section 8.09 of the indenture which provides:

> No remedy herein conferred upon or reserved to the Trustee or to the holders of Debentures is intended to be exclusive of any other remedy or remedies, and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute.

Simons argues that the thrust of section 8.09 is to allow debenture holders to bring claims for violation of the indenture independent of the procedural provisions of section 8.08. We disagree. Section 8.09 is a

---

or successor corporation, either directly or through the Company or any such predecessor or successor corporation, whether by virtue of any constitution, statute or rule of law, or by the enforcement of any assessment or penalty or otherwise; it being expressly agreed and understood that this Indenture

and all the Debentures are solely corporate obligations, and that no personal liability whatsoever shall attach to, or be incurred by, any such incorporator, stockholder, officer or director, past, present or future of the Company....

general provision providing for cumulative remedies, i.e., the indenture trustee or debenture holders have the right, apart from the indenture, to seek relief for statutory violations or fraud. However, section 8.09 cannot reasonably be read to circumvent the standing restrictions of section 8.08 which specifically restricts enforcement "of any right hereunder." The Chancellor correctly applied the bar of section 8.08 in dismissing the contract claims against the corporation.

■ Finally, Simons contends that the Court of Chancery should have granted her leave to amend her complaint to supply the fraud allegation deficiencies. No such request was made in the Court of Chancery, however, and this Court in the usual exercise of its appellate jurisdiction will not review questions not raised below. Supreme Court Rule 8. We do not deem it in the "interests of justice" in this case to examine the merits of a motion to amend the complaint without the benefit of the trial court's view of the matter and decline to do so.

\*　　\*　　\*　　\*　　\*　　\*

The decision of the Court of Chancery dismissing Simons' complaint is AFFIRMED.