David M. CLARK, Executor of the Estate of Nettie E. Brogdon, et al., Plaintiffs,

v.

CAMERON–BROWN COMPANY et al., Defendants.

No. C–75–65–G.

United States District Court,
M. D. North Carolina,
Greensboro Division.

July 30, 1976.

David M. Clark and P. Trevor Sharp, and A. L. Meyland and Norman Block, Greensboro, N. C., for plaintiffs.

Doris R. Bray and David M. Moore, Thornton Brooks and William McNairy, Greensboro, N. C., and Russell M. Robinson, II and William T. Graves, Charlotte, N. C., for defendants.

## MEMORANDUM OPINION AND ORDER

GORDON, Chief Judge.

Suing in his capacity as Executor of the Estate of Nettie M. Brogdon, plaintiff David M. Clark has brought this action, charging the defendants with "securities fraud, negligence, breach of trust, and common law fraud." Plaintiffs Guy V. Shaver and V. Carlton Kinney are the holders of 3200 and 200 warrants respectively of Cameron-Brown Investment Group and have intervened pursuant to an unopposed motion. In his capacity as executor of the Brogdon estate, plaintiff Clark holds 120 shares of beneficial interest of Cameron-Brown Investment Group.

The amended complaint paints a picture of mismanagement and manipulation of Cameron-Brown Investment Group. It is alleged that certain activities of the defendants constituted a "long-term scheme, plan, and conspiracy to manipulate Cameron-Brown Investment Group (CBIG) and its operation so that CBIG would not serve the interests of its security holders, but would fraudulently serve the members of the conspiracy to the end that the defendants should profit excessively, at great expense and damage to CBIG and its security holders." The amended complaint is drawn in two counts: specified components of the "long-term plan, scheme, and conspiracy" are cast in Count One as claims arising under sections 10, 14, and 20 of the Securities and Exchange Act of 1934, and Rule 10b–5 promulgated thereunder, and are recast in Count Two as pendent common law claims for "negligence, breach of trust, and fraud."

The plaintiffs, whose interest in the action is approximately $20,000.00, are now before the Court seeking a determination that this case proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The defendant Peat, Marwick, Mitchell & Company is before the Court seeking to have the amended complaint dismissed for failure to plead fraud with particularity. The Court will address this argument in Part II of this Memorandum Order.

As stated in the amended complaint, the class is intended to include all persons, except for the named defendants, who have purchased shares of beneficial interest or warrants of CBIG since September 4, 1969, and who have sold or retained such securities at a loss in reliance upon alleged false and fraudulent statements, misrepresentations, or nondisclosures by the defendants. At the initial pretrial conference the Court stated that it was of the opinion the case could be maintained as a class action under Rule 23(b)(3). However, the Court indi-

cated it considered a class covering a six-year period to be too broad and potentially unmanageable. Plaintiffs now propose a two year class beginning March 30, 1972, when the SEC received CBIG's 10–K report for 1971, and ending on April 18, 1974, when CBIG's 1973 10–K report, allegedly containing some "partially corrective disclosures," was filed. The plaintiffs, whose dates of purchases range from May 4, 1972, approximately one month after the filing of the 1971 10–K report, through August 1, 1973, it is contended, will adequately represent the proposed two year class.

At the pretrial conference the Court also expressed the opinion that Count Two could not proceed as a class action. Since "it cannot be seriously contended that proof of individual reliance is no longer a required element of common law fraud and deceit," *Tober v. Charnita, Inc.*, 58 F.R.D. 74, 84–85 (M.D.Pa.1973), certification of a class with respect to Count Two would result in "an unmanageable and unduly time-consuming procedure." *Id.*

## I.

The plaintiffs seek to qualify this lawsuit for class action treatment under the provisions of Rule 23(b)(3). Accordingly, the Court must be satisfied that the suit meets not only the four requirements of Rule 23(a), but also the critical two requirements of Rule 23(b)(3): that the common questions of law or fact predominate over questions affecting only individual members; that class action treatment is the superior method of conducting the suit.

### A. Numerosity and Commonality, 23(a)(1) and 23(a)(2)

As proposed in the amended complaint, the plaintiff class consists of approximately 15,000 security holders of CBIG. Although the class has been narrowed from a six year class to a two year class, there is no argument that joinder of all the members would be impracticable.

There is little doubt that a suit on behalf of a group of allegedly defrauded securities purchasers presents a particularly appropriate reason for a class action since common questions affecting investors may be resolved in one action. The defendants do not seriously argue that common questions of law or fact do not exist even though they object to what they term "formulary allegations" of a "continuing scheme" perpetrated through "standardized and interrelated representations." Common questions arise in the existence, materiality, and character of the misrepresentations and omissions pleaded by the plaintiffs, *see* 3B J. Moore, *Federal Practice* ¶ 23,06–1 (1974), and the allegations of the type found in the amended complaint regularly create the foundation for class actions launched in the security fraud area. *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968); *Mader v. Armel*, 402 F.2d 158 (6th Cir. 1968), *cert. denied*, 394 U.S. 930, 89 S.Ct. 1188, 22 L.Ed.2d 459 (1969); *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964).

### B. Typicality, 23(a)(3)

The defendants vigorously contend that the plaintiffs Shaver and Kinney cannot represent the purposed class because, as warrant holders, their claims are not typical of the claims of the class. There is some authority for this proposition.

The rights of CBIG warrant holders are determined solely by the terms of their contract with CBIG. There lies back of the warrant only the obligation of the issuer to comply with the contract contained therein. The warrant certificates of CBIG warrant holders state that

"No Warrant Holder shall . . . be deemed the holder of shares of [CBIG] for any purpose, nor shall anything contained in the Warrant Agency Agreement or herein be construed to confer upon the Warrant Holder, as such, any of the rights of a shareholder of [CBIG]. . . ."

In *Kusner v. First Pennsylvania Corporation*, 395 F.Supp. 276 (E.D.Pa.1975), a derivative and class action suit against a Massachusetts business trust, it was held that a

holder of warrants and convertible debentures lacked the rights and interests of a holder of shares in the trust:

"The warrants guarantee the opportunity to purchase shares during the period before their expiration at a fixed price but plaintiff is not a subscriber of the shares and until he exercises the warrants, they do not represent the financial commitment of a trust shareholder." 395 F.Supp. at 282–283.

In *Herbst v. Able*, 45 F.R.D. 451 (S.D.N.Y. 1968), purchasers of the convertible debentures of a corporation were not allowed to represent a class including those who purchased securities other than convertible debentures issued by the corporation. Only members of the class of purchasers of the other securities could sue as representative parties on behalf of that class.

■ Despite this authority, the Court believes the claims of the estate of Nettie M. Brogdon, plaintiff Shaver, and plaintiff Kinney arise from ordinary, open-market transactions in the securities of CBIG, as do the claims of other members of the proposed class. The shareholders and warrant holders thus share a complete identity of interest in establishing the allegations of the amended complaint. Moreover, no apparent antagonisms have arisen from the respective claims of the shareholders and warrant holders.

■ In establishing whether there is sufficient identity of interest between two distinct groups of security holders, courts need not look to the security holders' differing rights *vis-a-vis* the trust itself, but to whether their interests are identical in regard to the allegations of the complaint and in terms of attempting to establish each claim made in the complaint. In the recent case of *Handswerger v. Ginsburg*, CCH Fed.Sec.L.Rep. ¶ 94,934 (S.D.N.Y.1975), the plaintiff, who had purchased $5,000.00 in convertible debentures, proposed as class members those who had purchased and sold or who purchased and still held either debentures or common stock of the corporation during the material period. The court concluded that

"The claims or defenses of the representative parties are typical of the claims or defenses of the class. I can see no substantial difference between the claims of the debenture holders and the shareholders in the posture of this case. . . ." CCH Fed.Sec.L.Rep. at 97,240.

Furthermore, in *Dolgow v. Anderson*, 43 F.R.D. 472 (E.D.N.Y.1968), shareholders and debenture holders sought to form the plaintiff class. While the proposed class was denied, Judge Weinstein recognized that purchasers of one kind of security might be able to qualify as representative of those who purchased another kind if there were sufficient identity of interests between them. Debenture holders and shareholders were held to constitute a single class on this ground in *Fischer v. Kletz*, 41 F.R.D. 377 (S.D.N.Y.1966).

■ Application of this standard disposes of the defendants' argument that the warrant holders have an interest in common with the shareholders only insofar as it can be established that, but for the alleged conduct of the defendants, the market value of CBIG shares would not have fallen below the price that the warrant holder had to pay CBIG to exercise his option to purchase shares of beneficial interest. They point out, it became apparent if that, due to the impact of the rescission and the decline of the securities market, nothing could have been done to prevent CBIG shares from falling below this price, the shareholders would have a claim for further reduction in market value of their shares (resulting from the defendants' conduct), but the warrant holders would not.

However well-founded the argument, it relates to a difference in damages between the two groups of the proposed class and does not affect the proper class formation. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968); *Handswerger v. Ginsburg, supra; Kronenberg v. Hotel Governor Clinton, Inc.,* 41 F.R.D. 42 (S.D.N.Y.1966). The Court is not persuaded at this juncture that the claims or defenses of the plaintiffs Shaver and Kinney are not typical of the claims or defenses of the class. There is the

possibility that as the litigation of this case proceeds, another result would be desirable. In that event, the Court will not hesitate to alter or amend the class action order to provide a more appropriate course for the litigation of the case. *See* Rule 23(c), F.R. Civ.P.

### C. Adequacy of Representation, 23(a)(4).

■ The assurances of adequate representation under Rule 23(a)(4) is a command that the trial court be satisfied that the representatives of the class will pursue the claims of the class with "forthrightness and vigor." *Mersay v. First Republic Corp.*, 43 F.R.D. 465, 470 (S.D.N.Y.1968). The necessity for demanding adequate representation is obvious since "[t]he interests of the affected persons must be carefully scrutinized to assure due process of law for the absent members." *Carroll v. American Federation of Musicians*, 372 F.2d 155, 162 (2d Cir. 1967).

At the outset it should be stated that plaintiffs' counsel clearly possess the requisite competence, experience, and diligence to adequately protect the interests of the class. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968).

Although the defendants do not suggest any impropriety in bringing this suit, they contend that the plaintiff David M. Clark cannot adequately represent the class because of his multiple roles as putative class representative, estate executor, and lead counsel for the plaintiffs. Mr. Clark also has a personal interest in the action since he is a residuary beneficiary of the estate of Nettie Brogdon.

### 1. "The Estate Interest"

■ Due to distributions from the estate and the payment of inheritance taxes, the value of the Nettie Brogdon estate has shrunk from $86,000.00 to $30,000.00. The claim of the estate is a relatively small $3,200.00. The defendants contend that the tremendous costs of a securities class action suit in both delay and financial outlay conflicts with plaintiff Clark's duties to wind up the estate with dispatch and his duty not to waste assets. For a discussion of a similar question, *see Miller v. Alexander Grant & Co.*, CCH Fed.Sec.L.Rep. ¶ 93,287 (E.D.N. Y.1971).

The Court questions whether so small an estate can afford even a one-third pro rata share of the costs of prosecuting the action on behalf of the purported class and whether funds are available to pay the substantial unrecoverable costs and the taxable costs of the action, should they be taxed against the plaintiffs on the final judgment. Nevertheless a "primary function of the class suit is to provide 'a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group.'" *Escott v. Barchris Construction Corp.*, 340 F.2d 731, 733 (2d Cir. 1965), *cert. denied*, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1966), *quoted in Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 563 (2d Cir. 1968).

In North Carolina the personal representative of an estate is authorized to "maintain any appropriate action" on behalf of the estate, G.S. § 28A–13–3(a)(24), and the Last Will and Testament of Nettie Brogdon grants plaintiff Clark "full power to do any act . . . which, in his opinion, is reasonable and necessary for the proper administration [of the estate] . . . ." General Statute § 28A–23–4 allows counsel fees to be paid by the estate to an attorney serving as personal representative for services "which are beyond the ordinary routine of administration and of a type which would reasonably justify the retention of legal counsel." As the defendants point out, there is no statute that authorizes a personal representative who is also an attorney to initiate a class action on behalf of the estate where the estate may be exposed to great expense. But the "full power" granted plaintiff Clark in the will includes the authority to pursue the claims of an estate, even through the vehicle of a class action suit.

The Court cannot accept the defendants' intimation that plaintiff Clark might be willing to breach his fiduciary duty to the estate. Moreover, the "conflict of interest"

situation posited by the defendants' argument is somewhat illusory. There are two named representatives of the class who, in addition to the estate, would have to approve any possible settlement. There are also competent co-counsel who would have to approve any proposed settlement. Moreover, Rule 23(e) provides that

"[a] class action shall not be dismissed or compromised without the approval of the Court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

In light of the Court's control over the disposition of this action and the participation of competent co-counsel for the other class representatives, it is concluded that Mr. Clark, as executor of the estate of Nettie Brogdon, can adequately represent the class.

2. "Other Conflicts:" "The only persons to gain from a class suit are not potential plaintiffs, but the attorneys who will represent them." *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 571 (2d Cir. 1968).

The defendants acknowledge that the plaintiffs' attorneys have done nothing more than what Rule 23 allows, but they argue that the case, as a class action, is principally of interest to plaintiffs' counsel, not to the class action plaintiffs. This type action, to be sure, represents a gamble on the part of the class action plaintiffs' lawyer to put his time at risk against the possibility of a substantial recovery, hopefully by way of settlement, in which he, rather than any party he represents, stands to gain most. The defendants cite, for example, the $3,200.00 claim of the Nettie Brogdon estate and the plaintiffs' attorneys' statement that they have expended over 1,000 hours of time thus far. They vigorously protest that plaintiff Clark's commingling of the roles of class representative and lead attorney for the class precludes a finding of adequate class representation.

The "adequate representation" requirement is a result of the self-appointed fiduciary role assumed by the representative party and his counsel *vis-a-vis* those whom they purport to champion but who have had no voice in selecting them. It is a qualitative, and not quantitative, requirement. 3B J. Moore, *Federal Practice* ¶ 23.-07[4] (1974).

Courts have held that there is an irreconcilable conflict of interest when the roles of plaintiff and counsel become entangled. *In re Hotel Telephone Charges,* 500 F.2d 86 (9th Cir. 1974); *Saylor v. Lindsley,* 456 F.2d 896 (2d Cir. 1972) (derivative action); *Stull v. Pool,* 63 F.R.D. 702 (S.D.N.Y.1974); *Graybeal v. American Savings & Loan Assn.,* 59 F.R.D. 7 (D.D.C.1973); *Cotchett v. Avis Rent A Car System, Inc.,* 56 F.R.D. 549 (S.D.N.Y.1972). The problem raised by the defendants is troublesome to the Court. However, the defendants have no interest in the successful prosecution of the class suit against them. The defendants express concern for the adequacy of representation for the class, but the implicit objective of their arguments is to insure no representation at all. *See Umbriac v. American Snacks, Inc.,* 388 F.Supp. 265, CCH Fed.Sec. L.Rep. ¶ 94,963, at 97,312 (E.D.Pa.1975).

Courts have rejected the arguments raised by the defendants in cases where an attorney has served as sole counsel and sole named plaintiff for a class, *Kramer v. Scientific Control Corp. et al.,* 365 F.Supp. 780 (E.D.Pa.1974); *Lamb v. United Security Life Co.,* 59 F.R.D. 25 (S.D.Iowa 1972), where a familial or personal relationship exists between the attorney and the named representative, or where the named representative is an attorney who will serve as co-counsel for the class. *Parish, et al. v. Boetel & Co., et al.,* CCH Fed.Sec.L.Rep. ¶ 94,802 (D.Neb.1974); *Umbriac v. American Snacks, Inc., supra; Richardson v. Hamilton Int'l Corp.,* 62 F.R.D. 413 (E.D.Pa. 1974). The cases relied upon by the defendants are valuable, but lend themselves to different interpretations. Several are entwined with the Court's difficult struggle with, and apparent rejection of, the propriety of class action enforcement of certain sections of the Truth-In-Lending Act

wherein a statutory $100.00 minimum recovery would have led to astronomical, ruinous, and largely unjustified class recoveries for even minor and technical violations. *See Graybeal v. American Savings & Loan Assn., supra; Shields v. First National Bank of Arizona,* 56 F.R.D. 442 (D.Ariz. 1972); *Shields v. Valley National Bank of Arizona,* 56 F.R.D. 448 (D.Ariz.1971). Where the class action cannot possibly benefit the class members to a significant degree, and might subject them to liability, courts have been zealous in ensuring "adequate representation." *See Cotchett v. Avis Rent A Car System, Inc., supra.* In *In re Hotel Telephone Charges, supra,* where there was no "realistic possibility that the class members [would] in fact receive compensation" in a class action "raising mind-boggling manageability problems" and "providing plaintiffs' attorneys with lucrative incentives," the court decried "the initiation and financial maintenance of . . . suits primarily by attorneys acting in a dual capacity as named plaintiffs and counsel for the plaintiffs . . . ." *Id.* at 92.

In *Stull v. Pool, supra,* class action treatment was denied because the plaintiff was the wife of a member of the law firm which sought to represent the class, and the financial interest she and her husband, as a marital unit, might have had in the legal fees engendered by the lawsuit "far exceeded" her possible recovery. The defendants contend that *Stull* at least controls the issue, but the court is unsure of the continuing vitality of the proposition upon which the opinion rests and its applicability to the facts of this case. *Compare Stull v. Pool, supra, with Sweet v. Bermingham et al.,* 65 F.R.D. 551, CCH Fed.Sec.L.Rep. ¶ 94,956 (S.D.N.Y.1975).

■ What the Court finds most troubling is not addressed by any party: a burdensome ethical question would be raised if plaintiff Clark were to be called as a witness while he was acting as lead counsel for the plaintiffs. While Mr. Clark might otherwise be able to demonstrate "forthrightness and vigor," the potential conflict of interest inherent in such a situation would be obvious if Mr. Clark's testimony concerned either the material facts of this action or facts that could not be elicited from other witnesses. *See Sweet v. Bermingham et al., supra; Kriger v. European Health Spa, Inc., of Milwaukee, Wisconsin,* 56 F.R.D. 104, at 105–106 (E.D.Wis.1972). The Court is not inclined to allow an attorney acting in a dual role to continue in that capacity at trial. For the purposes of this memorandum, it has been assumed that this situation will not arise. However, if the case proceeds to trial, and such dual role develops, the Court will require Mr. Clark to withdraw as counsel for the plaintiffs. Accordingly, counsel will plan for the uninterrupted trial of this action. The Court considers this course of action eminently fair since there is some authority for the proposition that the requisite degree of adequate representation is absent in these circumstances. *Kriger v. European Health Spa, Inc., of Milwaukee, Wisconsin, supra; Stull v. Pool, supra; cf. Sweet v. Bermingham, supra.*

■ Nevertheless, the Court remains unconvinced by the defendants' arguments that this suit would be compromised unfairly. As was acknowledged in addressing the "estate" question,

"[t]he vision of substantial counsel fees might cloud the judgment of counsel for the plaintiffs and the representative parties but the court does not in granting a motion for class determination entrust to the representative parties ultimate responsibility for determining the fairness to the class of settlement decisions which compromise class interests. Any compromise or dismissal of a class action must be approved by the court and notice of the proposed compromise or dismissal must be given to all class members; judicial approval should be granted only after the court determines that the compromise is in the interest of the entire class." *Umbriac v. American Snacks, Inc., supra,* 388 F.Supp. at 275, CCH Fed.Sec.L.Rep. at 97,312.

The Court considers the provisions of Rule 23(e) are adequate to insure protection of

class interests under the representation of the named plaintiffs and counsel. It is, therefore, concluded that the plaintiff David M. Clark can adequately represent the class despite his multiple roles as putative class representative, estate executor, and lead counsel for the plaintiffs.

### D. Commonality and Predominance, 23(a)(2) and 23(b)(3)

While a party seeking certification of a class under Rule 23(b)(3) must show that the general prerequisites of 23(a)—numerosity, representation, some commonality of questions—are satisfied, the linchpin requirements are the additional conditions laid down in 23(b)(3): that the common questions of fact or law predominate, and that the class action is superior to other available modes. The rule directs searching pragmatic inquiry and specific findings by the court as to the requirements of 23(b)(3).

Rule 23(b)(3) is the "most complicated, and controversial" provision for class actions under amended Rule 23. 2 *Barron & Holtzoff, Federal Practice and Procedure* § 562 at 70 (Wright Ed.Supp.1970). The reasons for controversy surrounding its use are plain. Authorizing the class action "where the only justification is the presence of common questions of law or fact," *Id.,* it creates the greatest hazard for judicial miscalculations in its initial allowance and for impossibility of management. "The (b)(3) class unit can be gargantuan in character [citing the *Eisen* case]; and little more, functionally, than a suit by a lawyer with claim solicitation under the imprimatur of the court." 3B J. Moore, *Federal Practice* ¶ 23.02.1 (1974). Yet it also has been recognized, "at least in certain areas of security fraud and antitrust, as performing a 'prophylactic function' and having a 'therapeutic effect.'" *Id. citing Dolgow v. Anderson, supra* at 487.

The plaintiffs rest their claims in Count One on Sections 10, 14, and 20 of the Exchange Act, but the gravamen of the complaint lies in section 10 of the Act and Rule 10b–5 of the Securities and Exchange Commission. The amended complaint charges that the activities of the defendants constituted a common course of action consisting of the issuance of a series of interrelated financial reports and statements made over the course of the life of CBIG, which were misleading to the purchasers of stock and warrants of CBIG. If the amended complaint can be said to have a primary theory of recovery, it seems to be based on nondisclosure. Misrepresentation is amply pleaded, as is omission. The other theory of recovery pleaded in the amended complaint may be termed the "artificially inflated market price theory," *see In re U. S. Financial Securities Litigation,* 64 F.R.D. 443 (S.D.Cal.1974), since the plaintiffs have alleged the misrepresentations and nondisclosures influenced the market price of CBIG's securities. While the defendants' arguments address both theories of recovery, they vigorously argue that there is a lack of predominance and commonality with regard to the nondisclosure claim pleaded in Count One and protest that the "transparently formulary" character of the pleadings precludes a finding of a predominant common question.

The Court recognizes some inconsistency in the plaintiffs' argument that reliance is not an element of a plaintiff's case in nondisclosure cases and portions of the amended complaint which repeatedly plead "direct or indirect, actual or general reliance" upon the "interrelated financial reports and statements" of CBIG. The Fourth Circuit Court of Appeals has not squarely addressed the role of the reliance requirement in a 10b–5 class action determination. In *Carras v. Burns,* 516 F.2d 251, 257 (4th Cir. 1975), the most recent reference to the reliance requirement by the Court of Appeals, it was stated that evidence as to reliance or lack thereof is admissible as a matter of defense at least in a case involving face-to-face dealings:

"When a broker misrepresents a material fact, or in the circumstances shown by the plaintiffs' evidence in this case, fails to disclose information that a reasonable investor would consider significant, it may be inferred that the customer would have relied on the broker's statement, or

in the case of nondisclosure, that he would have relied on the information had he known it. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). *Affiliated Ute* also teaches that causation can be established by proof of the misrepresentation or nondisclosure. 406 U.S. at 154, 92 S.Ct. 1456. The broker, however, may rebut these inferences by proving lack of reliance and, consequently, a lack of causation. *Rochez Brothers v. Rhoades,* 491 F.2d 402, 410 (3rd Cir. 1974)." 516 F.2d at 257.

In *Rochez*,[1] *Affiliated Ute Citizens v. United States, supra,* was interpreted

"[not] to say that the question of reliance *vel non* may not be considered at all in a non-disclosure case, but only that proof of reliance is not required for recovery. If defendant is able to demonstrate that there was clearly no reliance, that is, that even if the material facts had been disclosed, plaintiff's decision . . . would not have been different from what it was, then the non-disclosure cannot be said to have caused the subsequent loss and under the ordinary principles of the law of fraud, recovery should be denied." 491 F.2d at 410.

The defendants stress that they have the right to prove nonreliance by investors and lack of causation in bar of the claims against them. They maintain that the "noncommon" questions arising from such proof as to the claims of the individual members of the class are substantially the same as those involved in proof of reliance and causation by the plaintiffs.

■■■■ It is undoubtedly true, as the defendants point out, that transactions between brokers and members of the plaintiff class raise questions affecting the individual members of the class. But it does not follow that class action designation will be withheld on the ground that these individual questions of reliance and damages predominate over the common questions of fact and law established by the pleadings. Since *Carras* is limited to face-to-face transac-

tions, it cannot be fairly said to be controlling. Under the nondisclosure theory of recovery, it appears that reliance is not an essential element of a claim for damages under section 10(b) and Rule 10b–5, and only the materiality of the representation or omission need be proved. It will not be necessary for the plaintiffs to prove that each purchaser of CBIG securities or warrants relied upon an omission in order to satisfy the requisite element of causation-in-fact. The defendants argue that the trend is away from an expansive approach and toward a more cautious approach with regard to both class actions and the substance of civil damage actions under Rule 10b–5. Nevertheless, the Court's approach is well supported by courts that have considered the question. To hold otherwise would impose an unreasonable and irrelevant evidentiary burden on the plaintiffs. *Affiliated Ute Citizens v. United States, supra,* 406 U.S. at 153–154, 92 S.Ct. 1456; *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 385, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975); *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.,* 480 F.2d 341, 375 (2d Cir. 1973), *cert. denied,* 414 U.S. 910, 94 S.Ct. 232, 38 L.Ed.2d 148 (1973); *Herbst v. ITT,* 495 F.2d 1308, 1316 (2d Cir. 1974); *Elkind v. Liggett & Myers, Inc.,* 66 F.R.D. 36, CCH Fed.Sec.L.Rep. ¶ 94,984 at 97,397 (S.D.N.Y. 1975); *Umbriac v. American Snacks, Inc., supra,* 388 F.Supp. 265, CCH Fed.Sec.L.Rep. at 97,310–97,311; *In re U. S. Financial Securities Litigation, supra,* 64 F.R.D. at 451; 1*see* also, Note, *The Reliance Requirement in Private Actions Under SEC Rule 10b–5,* 88 Harv.L.Rev. 584, 590–592 (1975). Moreover, acceptance of the "individual reliance" argument made by the defendants

" 'would be, in effect, an emasculation of the vitality and pliability of the amended rule.' (Citation omitted.) Common issues need not be dispositive of the entire litigation. The fact that questions peculiar to each individual member of the class may remain after common questions have been resolved does not dictate the

1. *Certiorari denied*, 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976).

conclusion that a class action is not permissible." *Dolgow v. Anderson, supra* at 490.

■ Nor does it follow that each document alleged to include a misrepresentation or nondisclosure creates its own subclass of purchasers who were influenced by that particular document. Where the fraud complained of constitutes a common course of action composed of many separate activities, so that it is the design of the defendant to influence all investors generally, or where fraud is carried out through recurring misrepresentations and nondisclosures in a series of prospectuses, annual reports, proxies, and press releases as alleged in this action, so that all plaintiffs are affected by similar representations, the maintenance of a single class of purchasers affected by the defendant's activities is proper. *Harris v. Palm Springs Alpine Estates, Inc., supra; Green v. Wolf Corp., supra; Mader v. Armel, supra; Fischer v. Kletz, supra; Kronenberg v. Hotel Governor Clinton, Inc., supra; Lamb v. United Security Life Co., supra; Umbriac v. American Snacks, Inc., supra; Aboudi v. Daroff,* 65 F.R.D. 388, CCH Fed.Sec.L.Rep. ¶ 94,931 (S.D.N.Y. 1974). The Court recognizes that commonality of fact may become tenuous in cases where reliance is sought to be proved through numerous transactions reported in different statements if the same or similar misrepresentation is not alleged to have been made in each document. Under the "artificially inflated market price" theory, wherein the plaintiffs have alleged that "the artificial inflation of the market value of the securities of CBIG caused the shares and warrants drastically to rise 'in tandem'

and the collapse of that deception caused them to plummet in the same manner," the objection is not sufficient in spite of any variance among misrepresentations since the misrepresentations themselves are alleged to be part of a common scheme to influence the market price of CBIG's securities. *See In re U. S. Financial Securities Litigation, supra* at 451. It is the opinion of the Court that the common questions of law and fact clearly predominate.[2]

### E. Superiority, 23(b)(3)

If the Court accepted the defendant's argument that plaintiffs are required to prove reliance directly, there would be little difficulty in ruling that a class action would be unmanageable. Having rejected that, the Court must also reject the concomitant argument that the action is unmanageable because the individual issues as to the amount of damages predominate. While "other factors and events," as defendants contend, may have potentially affected the drop in market value of the class members' shares, "the course of action of the stock is not equivalent to the course of action of the defendants. It is the latter which is important in determining this class action motion." *Aboudi v. Daroff, supra,* 65 F.R.D. at 391, CCH Fed.Sec.L.Rep. at 97,232. *See Elkind v. Liggett & Myers, Inc., supra,* 66 F.R.D. 36, CCH Fed.Sec.L.Rep. at 97,398. The allegations against the defendants charge that the false and misleading financial reports and documents of CBIG caused CBIG's securities to be inflated above their true value throughout the period of the allegedly fraudulent conduct. *See Aboudi*

2. Among the common questions identified by plaintiff's counsel are the following:

(1) Whether misrepresentations were in fact made, and made in such a fashion as to be misleading and to constitute material misrepresentations;

(2) Whether the alleged nondisclosures or late disclosures were of such a nature as to constitute material nondisclosures;

(3) Whether the alleged activities of the defendants constituted a common course of conduct, or ongoing scheme, which common conduct affected and damaged the class of plaintiffs represented herein;

(4) Whether the alleged misrepresentations and nondisclosures were a part of, or issued through, standardized and interrelated documents;

(5) Whether the defendants, or one or more of them, controlled CBIG to engage in the activities alleged, or whether two or more of the defendants conspired *together to cause* CBIG to so engage in such activities, or, with knowledge or recklessness, aided and abetted in the doing of the things alleged;

(6) Whether the alleged misrepresentations and nondisclosures influenced the market price of CBIG's securities and if so, in what amount.

*v. Daroff, supra,* 65 F.R.D. 388, CCH Fed. Sec.L.Rep. at 97,232. In this respect, and as to the damages argument, there is predominate commonality of fact among the members of the class.

 The defendants concede that damage issues pose no problem in certification of the action if damages for members of the plaintiff class can be determined through use of a formula and if the only individual questions relate to application of the formula in particular cases. The trial of this action is intended to establish (1) the fraudulent course of conduct alleged, and (2) the amount by which the price of the shares and warrants were inflated during the fraud period. After the trial, members of the plaintiff class should be in position to compare the amount which they paid for the shares or warrants with the amount by which the shares or warrants have been determined to be overinflated, if at all, at the time the securities were purchased by each class member. Since this will be the amount of each member's damages, the damages for the class may be ascertained by mathematical computation. See *Blackie v. Barrack, supra* at 909, n. 25.[3]

 The predominance of common questions over individual questions dictates the certification of this action as a class action. Rule 23 was designed to address those actions involving numerous plaintiffs, with small claims predicated upon common questions of law and fact for it permits persons to redress grievances which, individually, would be too small to justify the expenses of litigation. The Court finds not only that judicial economy can be achieved by the class action procedure, but also that superiority of the maintenance of this class action over litigation by the class members is apparent. *See Eisen v. Carlisle & Jacquelin,* 479 F.2d 1005, 1019 (2d Cir. 1973), *aff'd,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

**3.** ". . . [W]e are confident that should the class prevail the amount of inflation during the period can be charted and the process of com-

## II.

Defendant Peat, Marwick, Mitchell & Company (PMM) has moved for an order pursuant to Rule 9(b), F.R.Civ.P., dismissing the amended complaint for failure to state "the circumstances constituting fraud . . . with particularity." PMM also seeks an order, pursuant to Rule 12(b), F.R.Civ.P., dismissing the amended complaint for failure to state a claim under the federal securities laws upon which relief can be granted, and for lack of subject matter jurisdiction.

Although the amended complaint paints a picture of mismanagement of Cameron-Brown Investment Group, PMM is specifically excluded from the allegations that the defendants "jointly and severally, at all times dominated and controlled CBIG in the conduct of its business," and is charged with aiding and abetting the alleged fraud on plaintiffs by reporting upon allegedly artificially inflated statements of CBIG and by participating in the preparation of "various" reports and documents issued and filed by CBIG that contained alleged misstatements.

The real issue confronting the Court is whether the amended complaint sufficiently particularizes fraud on the part of professional accountants in connection with their reports on the financial statements of CBIG, or any other alleged acts of fraud.

 The purpose of Rule 9(b) is to prevent the indiscriminate or unjustified charging of fraud by requiring the allegation of particular facts showing fraud and by requiring that when a plaintiff alleges fraud only on "information and belief," he provides a factual statement of the basis for his "information and belief." *See* 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1296 (1969). In *Rich v. Touche Ross & Co.,* 68 F.R.D. 243, 245 (S.D.N.Y. 1975), it was recognized that "[t]he need for this protection is most acute where the potential defendants are professionals whose

puting individual damages will be virtually a mechanical task." *Blackie v. Barrack, supra* at 905.

reputations in their field of expertise are most sensitive to slander." .

PMM objects most vigorously to paragraph XX of the amended complaint, the last sentence of which charges that

". . . Peat Marwick certified the artificially inflated statements of the Trust, and participated in the preparation of the *various* interrelated financial reports, prospectuses, proxy solicitations, press releases, and *other* documents issued, filed and circulated, and knew, or should have known, of the artificially inflated balance sheets and earnings statements, of the nondisclosures alleged herein, and of the *material misstatements of fact and policy in the documents circulated.*" (Emphasis added.)

PMM argues that simply alleging in conclusory language that it reported upon "artificially inflated statements" and participated in "various interrelated financial reports" which it "knew, or should have known" to contain "material misstatements of fact" is not sufficient compliance with the requirements of Rule 9(b). In *Rich v. Touche Ross & Co., supra* at 246, the Court stated:

"There must be further identification of what statements were [reported upon] and in what respects they were false, misleading or inaccurate or what omissions were made and why the statements made are believed to be misleading."

PMM contends that the single sentence contained in paragraph XX (quoted above) merely imputes misconduct that cannot be inferred from the facts put forward. *See Segal v. Coburn Corp.,* [1973 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,002 at 94,020 (E.D.N.Y.1973). It states that if plaintiffs were in possession of facts that would support their charges of fraud against it, "it is not an unreasonable burden to expect the plaintiffs to be able to identify the misstatements, omissions or fraud that caused them to engage in particular securities transactions." *Rich v. Touche Ross & Co., supra* at 247. .

The competing interests of the parties and the policies behind Rules 8 and 9(b), F.R.Civ.P., mask any easy determination of the motion. The "various interrelated financial reports" and "other documents" reported upon by PMM certainly are not specified particularly, nor are the alleged misstatements or misrepresentations designated particularly. While plaintiffs apparently had less difficulty particularizing in the amended complaint the acts taken by the other defendants in furtherance of the plan, scheme, and artifice to enrich themselves through self-dealing practices in connection with CBIG, the allegations concerning PMM are somewhat less than that which might be required if Rule 9(b) were read restrictively, In view of fact that PMM is an "aider and abettor" and a nonprincipal defendant, the allegation of particular facts is especially important.

 Rule 9(b) and Rule 8, F.R.Civ.P., are not mutually exclusive but must be read in conjunction with each other.

"It is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." 5 Wright and Miller, § 1298 (footnotes omitted.) .

In class action securities cases it is not always practical to require the plaintiffs to plead with absolute particularity even though their allegations are based on information and belief. The sufficiency of a pleading turns upon consideration of a number of factors, not the least of which is whether the action seeks to redress a wrong, not to find one. *See, e. g., Segal v. Gordon,* 467 F.2d 602 (2d Cir. 1972).

The crux of the charges against PMM are found in Paragraphs XIX and XX of the amended complaint, which set forth the alleged misrepresentations and omissions appearing in the documents of CBIG. These paragraphs take the form of a short and plain statement and the facts upon which the allegations of fraud are based are not set out in minute detail. Perhaps the most particularized charges are pleaded in subparagraphs (2)(b) and (f) of paragraph XIX. Subparagraph (a) of paragraph XIX

charges false inflation of CBIG's income figures. Plaintiffs allege the figures were overstated both because interest was accrued when unpaid and when it was not reasonable to expect payment, and because interest advances were routinely included in loans of CBIG. Subparagraphs (b) and (f) charge that misleading representations appeared in CBIG documents regarding loan loss, reserves and security for loans. The only explicit reference to PMM in paragraph XX is found in the last sentence which has been quoted above. Nevertheless, the Court believes it sufficiently charges PMM with misconduct as required by Rule 9(b) because the wrongful activities in which PMM is alleged to have participated are identified positively. There is no doubt that the conspiratorial conduct charged against PMM in paragraph XX entails the preparation of misleading accounting data and its acquiescence in the use of that data by other defendants. *See duPont v. Wyly,* 61 F.R.D. 615, 631 (D.Del.1973).

■ PMM contends that the Court must bear in mind that many of the financial statements referred to in paragraphs XIX and XX are representations by CBIG, not PMM. Despite this, the amended complaint is no less sufficient. Financial reporting is not an exact science. It involves judgment on the part of both management with respect to the financial statements themselves and the independent certified public accountant in reporting on them. *See, e. g., Crane Co. v. Westinghouse Air Brake Co.,* 419 F.2d 787, 799–801 (2d Cir. 1969), *cert. denied,* 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970). The allegations made in paragraphs XIX and XX are sufficiently particular to apprise PMM of the nature of the alleged misrepresentations complained of and the basis of the plaintiffs' allegations. Whether PMM complied with its duty of disclosure and expressed its opinion on CBIG financial statements in accordance with generally accepted accounting princi-

ples is a question more properly considered elsewhere.

■ The Court would be of the opinion that the allegations expressed in paragraphs XIX and XX should be stated with more particularity if it were not for the additional fact that the allegations are sufficient to identify the "categories of documents" allegedly containing misstatements and misrepresentations and the information misrepresented therein. Perhaps the thrust of PMM's argument on this Rule 9(b) motion is directed toward the plaintiffs' failure to designate the documents referred to in the amended complaint and the alleged misstatements contained in them. *See Rich v. Touche Ross & Co., supra.* The Court is sympathetic to this argument to some extent because it insures that allegations of fraud are the result of a wrong which has occurred and its consequent investigation, and not the result of damaging and groundless allegations premised upon a hope of uncovering some fraudulent activity during discovery.[4] The amended complaint in this case, however, appears to be based on a large degree of investigation and research. Even so, until discovery has been completed, it is impractical to expect the plaintiffs to designate *each* document within the defendants' possession and control and *each* misstatement contained therein. Were they able to do so, the Federal Rules of Civil Procedure would not force upon the plaintiffs the onerous burden of pleading voluminous or prolix matters as long as a defendant has notice of the basic transactions upon which a claim of fraud is based. A balance must be struck, protecting defendants from damaging but lightly made charges of fraud while protecting plaintiffs from pleading complex "evidence." In *duPont v. Wyly, supra* at 630–632, the Court adopted this approach and rejected a similar argument, made on behalf of Arthur Young and Company, on the aforementioned ground that it was sufficient that the plaintiff had identified the categories of

---

4. In *Segal v. Gordon, supra* at 608, n. 8, the court makes a noteworthy comparison of the first complaint in *Segal* with "the investigation and research done by Mr. Brillant and Mr. Rockler in *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 368–372, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966)."

documents allegedly containing misstatements and the information allegedly omitted or misrepresented by the documents.

A final comment must be made in view of the Supreme Court's recent decision in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). A full discussion of the decision is not necessary here, but it should be noted that the court held that a private cause of action for damages will not lie under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5 in the absence of any allegation of "scienter,"—intent to deceive, manipulate, or defraud—on the defendant's part. PMM contends that *Ernst & Ernst* underscores the insufficiencies apparent in the amended complaint: that PMM "knew, or should have known" makes out a case of negligent nonfeasance, not one with an element of scienter.

At this stage of the proceedings, when discovery is not complete, the Court is not prepared to rule that the plaintiffs' action is founded solely on a theory of negligent nonfeasance. The gloss given the "knew, or should have known" allegations of the amended complaint by the plaintiffs invokes the element of actual knowledge, and the import of the amended complaint is that PMM acted recklessly, wilfully, or with a degree of "conscious fault." *See Clegg v. Conk*, 507 F.2d 1351, 1361–1362 (10th Cir. 1974), *cert. denied*, 422 U.S. 1007, 95 S.Ct. 2628, 45 L.Ed.2d 669 (1975), *cited in Ernst & Ernst v. Hochfelder, supra*, 425 U.S. at 193–194, n.12, 96 S.Ct. at 1381, n.12, and the discussion of cases there. In *Ernst & Ernst* respondents' cause of action as revealed through discovery, rested on a theory of negligent nonfeasance and the premise was that

> "Ernst & Ernst had failed to utilize 'appropriate auditing procedures' in its audits of First Securities, thereby failing to discover internal practices of the firm said to prevent an effective audit." 425 U.S. at 190, 96 S.Ct. at 1379.

 The Court believes that *Ernst & Ernst* does affect the plaintiffs' suit in that it will require much stricter and more difficult proof against PMM. However, the conspiratorial conduct alleged against PMM and PMM's posture in the action compared with that of the other defendants manifests allegations of wilful conduct sufficient for civil liability under § 10(b) and Rule 10b–5. If it becomes clear at some later stage that the plaintiffs' action rests upon negligence, further examination may be in order.

After full consideration of the facts and the legal contentions of the parties, the Court finds as follows as to Count One of plaintiffs' amended complaint:

1. The class as defined below is so numerous that joinder of all members is impracticable.

2. There are questions of law or fact common to the class.

3. The claims of the representative parties plaintiff are typical of the claims of the class.

4. The representative parties plaintiff will fairly and adequately protect the interests of the class.

5. Questions of law or fact common to the members of the class predominate over any questions affecting individual members.

6. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

7. The proper definition of the plaintiff class, resulting in a class that now appears manageable by the Court and appropriate under the pleadings, is as follows:

> All parties (which means individuals, corporations, partnerships, associations, joint stock companies, trusts and unincorporated associations) other than the defendants or any of them, who purchased shares of beneficial interest or warrants therefor of Cameron-Brown Investment Group during the period of time beginning on March 30, 1972, and ending on April 18, 1974, inclusive, and who thereby suffered loss or damage.

For good cause appearing and on the basis of the above findings, NOW, THEREFORE, IT IS ORDERED:

1. *Clark, Executor, et al., v. Cameron-Brown Company, et al.,* Civil Action No. C–75–65–G, shall be maintained as a class action under Rule 23(b)(3), Federal Rules of Civil Procedure, for the class defined in the findings above, without prejudice to the Court's powers under Rule 23(c)(1), Federal Rules of Civil Procedure. The named plaintiffs in said civil action are hereby designated as representatives of said class so defined.

IT IS FURTHER ORDERED that

1. The defendant Peat, Marwick, Mitchell & Company's motion for an order, pursuant to Rule 9(b), F.R.Civ.P., dismissing the amended complaint is denied without prejudice to renew the motion to dismiss after discovery.

2. The defendant Peat, Marwick, Mitchell & Company's motion for an order, pursuant to Rule 12(b), F.R.Civ.P., dismissing the amended complaint for failure to state a claim upon which relief can be granted, and for lack of subject matter jurisdiction is denied.